JEFFERSON GAS COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 14951, 33247. Promulgated June 24, 1929.

*E. S. Kochersperger, Esq.*, for the petitioner.
*Brice Toole, Esq.*, for the respondent.

1136

OPINION.

LITTLETON: In each of the years under consideration the petitioner, under the provisions of the instrument set out in the findings of fact, paid to T. A. Miller and his wife, Ella S. Miller, the sum of $31,000. These payments, the petitioner contends were rentals or other payments required to be made as a condition to the continued use or possession of the property which is the subject matter of the instrument heretofore referred to, and, as such, constitute proper deductions from the gross incomes of the years concerned. The respondent has allowed a deduction for each year, in an amount equal to the product of the number of tons of coal removed during the year multiplied by 12 cents, holding that the sums paid in excess of such amounts "are a part of the expense of developing the plant or mine, and as such are capital expenditures" and not proper deductions from gross income.

The question thus presented to us depends for its solution upon the construction to be placed upon the agreement under which the payments were made. This proceeding was submitted upon a written stipulation of facts which makes no reference whatever to the circumstances surrounding the parties when the agreement was made, or to the construction given the agreement by the parties themselves. Hence, in determining whether the agreement is a lease or creates a relation other than that of lessor and lessee, we must ascertain the intent of the parties entirely from the agreement itself.

Though the use of words ordinarily used in a lease is to be given weight in arriving at the intent of the parties, such use is not conclusive. The use of technical words or phrases which have a definite legal signification can not defeat the intent of the parties if that intent is manifest from the whole agreement. So that the words " demise," " lease," " let," " lessors," and " lessee," and like words, specially appropriate to a contract between the owner and tenant for years, have no bearing whatever if the agreement is not in fact a lease. Nor is the character of the agreement affected by the contractual provisions that in case of nonpayment of " royalties " the grantors shall have the right of distress, or at their option, the right of forfeiture of the grant. The stipulated remedies are consistent with either a sale or a lease.

In the agreement under consideration the operative words are " demise," " lease," and " let," which signify to grant the temporary possession of the subject; and the parties have styled themselves " lessors " and " lessee." The entire agreement is couched in terms and phrases appropriate to a contract between the owner and tenant for a term of years, which give to the agreement all the appearances of a lease. But when all parts of the agreement are read as a harmonious whole, the intent of the parties is clearly disclosed to have been a purchase and sale of coal in place; and the form of agreement adopted to accomplish the purposes of the parties was undoubtedly a matter of the most convenient manner of securing to the grantors the greatest degree of security for the payment of the purchase price.

The sum and substance of this agreement is that the grantors have sold all of the coal, in place, underlying the described premises to the petitioner, for a consideration of $310,000, on a deferred-payment basis. That conclusion is inescapable. The agreement provides that when the petitioner shall have paid " royalties " amounting to $310,000, t .e lessors. shall, in consideration of the additional sum of $1, execute and deliver to the petitioner a deed in fee simple for all of the unmined coal. There is no escape by the petitioner from the payment of the fixed sum, unless it be by way of operation of the forfeiture provisions of the agreement. If it has not paid " royalties " amounting in all to $310,000 before the end of the term fixed by the agreement, it will have done so by the end of the term. Even if the petitioner had not mined and removed an ounce of coal, by the end of the term of the agreement it will have paid the entire stipulated price, for it has bound itself to make an annual minimum payment of $31,000 for a term of ten years, and when it shall have complied with the covenants of the agreement in that respect, it will be entitled to receive a deed in fee simple for all of the unmined coal. Furthermore, as we construe the contract, the petitioner is obligated to pay

the price of $310,000, irrespective of the total quantity of coal recovered and even though the product of the total number of tons recovered multiplied by the "royalty" rate of 12 cents per ton amounts to a lesser sum. Such is the purport of the provision that the petitioner "agrees to pay the royalties above mentioned and agreed upon regardless of the quality or character of said coal and regardless of its location or availability or mining condition and the said lessee shall and will pay said royalties on the basis of not less than four thousand five hundred thirty-two (4,532) tons per acre even though that amount is not recovered." These provisions of the agreement upon which we have commented are entirely foreign to an actual lease, and disclose the true nature of the agreement to be a sale rather than a lease.

By our conclusions as to the nature of the agreement under which the payments of $31,000 were made in each of the years under consideration, we are constrained to hold that such payments were payments on the purchase price of all the coal in place, and, as such, represent capital expenditures and are not proper deductions from gross income. In each of the years before us, the respondent has allowed deductions for "Depletion or advanced royalties," and the petitioner has presented no proof that it is entitled to any greater deductions than those allowed by the respondent.

During the fiscal year ending August 31, 1921, the petitioner had not reached the state of productive operation of the mine, but then was engaged in the development of the property. It first attempted to operate the mine by the stripping process, which it abandoned as uneconomical after removing a negligible amount of coal, and then began the development of the property as a drift mine, no coal being mined by the new process during this year. The expenditures for labor by petitioner in this instance, as well as for materials employed in the development of mining property, are capital expenditures and are not deductible as expenses from gross income. *Brier Hill Collieries*, 12 B. T. A. 500. Pursuant to the laws of Pennsylvania, petitioner insured itself against liability for accident to its mine employees and during the fiscal year 1921 paid premiums of $2,429.37 for such compensation insurance. This insurance was incident to the labor employed and its cost properly is an element of the labor cost. Since the mine was in process of development in 1921 and expenditures for labor employed in the development of mining property are capital expenditures, this expenditure for employees' compensation insurance is likewise, in this instance, a capital expenditure and is not deductible as expense from the gross income of that year. Accordingly, we approve the determination of the respondent on this issue.

The last item in controversy concerns the deductibility of an item of $1,700 expended in 1921 in recovering and repairing a steam shovel used by the petitioner to build a spur track to the mine which shovel had fallen over an embankment into a creek. The Pittsburgh & West Virginia Railroad Co. recovered the shovel and made certain repairs to it for which the petitioner, on November 29, 1920, paid the railroad company $1,700. The cost of raising the steam shovel frcm the creek bottom to its position on the railroad track and repairs thereto necessitated by the damage resulting from its fall into the creek, were ordinary and necessary expense. *Samuel Zimmern*, 28 Fed. (2d) 769. Accordingly, we hold that respondent erred in refusing to allow the deduction of this loss for the fiscal year 1921.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*